UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ROBERT SMITH,

       Plaintiff,

v.                                Case No. 3:14cv231/MCR/CJK

COURTNEY, et al.,

       Defendants.

_____/

## REPORT AND RECOMMENDATION

This cause is before the court on the defendants' motion to dismiss (doc. 82)[1] and plaintiff's response in opposition (doc. 92). The matter is referred to the undersigned Magistrate Judge for Report and Recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(C). Upon careful consideration, the undersigned concludes the motion to dismiss should be granted.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiff, proceeding *pro se* and *in forma pauperis*, is an inmate of the Florida penal system currently confined at Northwest Florida Reception Center. Plaintiff commenced this case on May 5, 2014, by filing a civil rights complaint pursuant to

---

[1] The references to document and page numbers will be to those automatically generated by the CM/ECF system.

42 U.S.C. § 1983.  (Doc. 1).  Plaintiff subsequently filed a fourth amended complaint, the operative pleading in this action.  (Doc. 48).  The fourth amended complaint names three employees of Santa Rosa Correctional Institution ("SRCI") as defendants: Warden R. Comerford; Assistant Warden Courtney; and Grievance Coordinator Bishop.  (*Id.*, p. 1-3).  T. Bowden, the remaining defendant, is an employee of the Florida Department of Corrections' Bureau of Inmate Grievance Appeals.  (*Id.*, p. 1-2, 28).  The defendants are sued both in their individual and official capacities.  The factual matters that follow are drawn from the complaint.

While confined at SRCI, plaintiff filed an informal grievance with the chaplain on April 20, 2014, asking about the treatment of Muslims.  (*Id.*, p. 14).  Plaintiff attached a copy of this grievance to his initial complaint.[2]  (Doc. 1, p. 8).  In the grievance, plaintiff wrote:

> Mr. Chaplin Lewis, this grievance is being filed in accordance with Ch. 33-F.A.C. as predicated by the supreme law of the land. . . . On 4-18/19, 2014 approximately I talked with you [about] the condition of Muslims

---

[2] Plaintiff did not attach the grievance to the fourth amended complaint.  Nevertheless, the court may consider the grievance when ruling on the motion to dismiss because it forms the basis of plaintiff's claims and he does not contest the veracity of its contents, though he does challenge the policy the response reflects.  *See Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) ("A district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss, and if the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls."); *cf. id.* ("[O]ur cases do not permit a district court to consider, on a motion to dismiss, exhibits attached to an earlier complaint that a plaintiff has expressly disavowed or rejected as untrue in a subsequent amended complaint.").

being denied and discriminated against concerning the rightful and
lawful practice of the Islamic way of life and/or Islamic religion.  For
some unlawful reasons Islam is being attack by surreptitious means, in
violation of the First Amendment of the U.S. Const. . . . The grievant
seeks redress and remedy.  The grievant would like to attend Jumah
Services on Friday or in the alternative provide space in the dorms on all
levels of [close management] status for the Muslims to Jumah and study
classes just as other religious sects do things.[3]

(*Id.*).  Lewis did not respond to the grievance; instead, defendant Courtney denied the

grievance, stating: "You are not eligible to attend Juma services due to your status.

Work yourself off [close management] and this will be available to you."  (*Id.*).

Thereafter, plaintiff filed a formal grievance concerning the issue.  (Doc. 48, p. 15,

22).  Defendants Comerford and Bishop denied the grievance.  (*Id.*, p. 15).  Defendant

Bowden also denied plaintiff's grievance appeal.  (*Id.*).  Plaintiff asserts the denial of

his right to practice his religion exacerbated his "pre-existing physical, mental, and

emotional injuries."

Based on the foregoing, plaintiff asserts the defendants violated his rights

under the First, Eighth, Ninth, and Fourteenth Amendments to the United States

Constitution.  (*Id.*, p. 17).  In addition, plaintiff challenges the defendants' actions

under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"),

---

[3] "Jumah is a special noon service [on Friday] that all adult, male Muslims are obliged to
attend."  *Cranford v. Hammock*, Case No. 1:09cv70-MP-AK, 2010 WL 916031, at *5 (N.D. Fla.
Mar. 11, 2010).

42 U.S.C. §§ 2000cc *et seq*, and state law. (*Id.*). For relief, he seeks declaratory and injunctive relief, as well as compensatory and punitive damages. (*Id.*, p. 33-36). Of note, plaintiff seeks an injunction requiring the defendants to:

> provide a clean space on all levels of CM (1, 2, 3) for the Muslims to attend Jumah services on Fridays at 12:15 in the afternoons. Or in the alternative purchase 36 portable TVs with high definition and DVD players with 45 pre-record Kutbars (Islamic preaching out of the Qur'an) in (English and Arabic) to be watched on Jumah Fridays.

(*Id.*, p. 33).

On December 15, 2015, the defendants moved to dismiss plaintiff's fourth amended complaint, asserting: (1) they are entitled to Eleventh Amendment immunity to the extent they are sued in their official capacity for damages; (2) plaintiff fails to state a claim against the defendants in their individual capacity; (3) monetary damages are not available under RLUIPA; and (4) under 42 U.S.C. § 1997e(e), plaintiff is not entitled to compensatory or punitive damages. (Doc. 82). Plaintiff subsequently responded in opposition to the defendants' motion to dismiss.[4] (Doc. 92).

---

[4] Plaintiff asserts the defendants' motion to dismiss is untimely because it was not filed within 60 days of September 25, 2015–the date the court ordered the defendants to be served. The defendants, however, were directed to file a response to the fourth amended complaint within 60 days of being served. Because the defendants were served on–or after–October 16, 2015, and the motion to dismiss was filed on December 15, 2015, the motion is timely.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for a motion to dismiss a complaint where the complaint fails "to state a claim upon which relief can be granted." In considering a Rule 12(b)(6) motion, the court reads plaintiff's *pro se* allegations in a liberal fashion, *Haines v. Kerner*, 404 U.S. 519 (1972), accepts all factual allegations in the complaint as true and evaluates all reasonable inferences derived from those facts in the light most favorable to the plaintiff. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994). There are a few exceptions to this rule, such as where the facts alleged are internally inconsistent or where they run counter to facts of which the court can take judicial notice. 5B Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 1357 (2008). Further, only well pleaded factual allegations are taken as true and only reasonable inferences are drawn in favor of the plaintiff. *See Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1485 (11th Cir. 1992); *Marrero v. City of Hialeah*, 625 F.2d 499, 502 (5th Cir. 1980);[5] *see also Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974) ("unwarranted deductions of fact are not admitted as true"). Mere "labels and

---

[5] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

conclusions" are not accepted as true.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (noting that courts "are not bound to accept as true a legal conclusion couched as a factual allegation"); *Ashcroft v. Iqbal*, 556 U.S. 662, 680-81 (2009) (explaining that conclusory allegations are not entitled to a presumption of truth).

As the Supreme Court reiterated in *Iqbal, supra*, although Rule 8 of the Federal Rules of Civil Procedure does not require detailed factual allegations, it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  A complaint or counterclaim must state a plausible claim for relief, and "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  The mere possibility that the defendant acted unlawfully is insufficient to survive dismissal for failure to state a claim. *Id.*  The complaint must include "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, that is, "across the line from conceivable to plausible." *Id.* at 570.

DISCUSSION

The complaint alleges defendants Courtney, Bishop, Comerford, and Bowden violated plaintiff's rights by denying his grievances and refusing to permit him to attend Jumah.   In essence, however, plaintiff takes issue not with the individual actions of the defendants, but with the Florida Department of Corrections' policies concerning inmates in close management.

First Amendment

"Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 107 S. Ct. 2400, 96 L. Ed. 2d 282 (1987) (internal citations omitted).   This right is not absolute, however, nor is it as expansive as the right enjoyed by persons in free society.   *Id.*; *Hakim v. Hicks*, 223 F.3d 1244, 1247 (11th Cir. 2000).   "[L]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'"   *O'Lone*, 482 U.S. at 348 (*quoting Price v. Johnston*, 334 U.S. 266, 285, 68 S. Ct. 1049, 92 L. Ed. 1356 (1948)).   "A prison regulation, even though it infringes the inmate's constitutional rights, is an actionable constitutional violation only if the regulation is unreasonable." *Hakim*, 223 F.3d at

1247. "In evaluating a prison regulation's reasonableness, [the court] consider[s] four factors, first enunciated in *Turner v. Safley*, 482 U.S. 78, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987), including: '(1) whether there is a valid, rational connection between the regulation and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the asserted constitutional right that remain open to the inmates; (3) whether and the extent to which accommodation of the asserted right will have an impact on prison staff, inmates, and the allocation of prison resources generally; and (4) whether the regulation represents an exaggerated response to prison concerns.'" *Johnson v. Brown*, 581 F. App'x 777, 780 (11th Cir. 2014) (*quoting Hakim*, 223 F.3d at 1247-48). Here, the restriction on plaintiff's ability to attend Jumah is clearly reasonable in light of the four *Turner* factors.

Plaintiff's complaint (doc. 48), and the grievance response upon which it is based (doc. 1, p. 8), make clear that Mr. Smith is prohibited from attending Jumah because he is in close management ("C/M"). "Close management is the confinement of an inmate apart from the general population, for reasons of security, or the order and effective management of the institution, where the inmate, through his or her behavior, has demonstrated an inability to live in the general population without abusing the rights and privileges of others." Fla. Admin. Code r. 33-601.800 1(d);

*see also id.* r. 33-601.800(2) (describing the different levels of close management and the factors considered when placing an inmate in close management). "While in a close management unit, an inmate's movement within the institution and contacts with other individuals will be restricted." *Id*. r. 33-601.800 11(a).

The regulation to which plaintiff objects–a prohibition on C/M inmates attending religious preaching and prayer with other Muslims–is clearly related to preserving security. Inmates subject to C/M have already displayed disruptive behavior, leading to their removal from the general prison population. Prohibiting C/M inmates from interacting with others during religious services is an important part of the C/M regimen, preventing the C/M inmates, who have a history of poor behavior, from abusing the rights and privileges of others. *See Lawson v. Singletary*, 85 F.3d 502, 510 (11th Cir. 1996) ("In evaluating prisoners' constitutional rights claims that challenge assertions by prison officials that the inmates' rights must yield before the state's legitimate penological interests, courts have 'accorded wide-ranging deference [to prison administrators] in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'") (brackets in original and citation omitted).

Second, although inmates in C/M cannot attend Jumah, they are not completely denied the right to practice their religion.  "Inmates in close management status shall be allowed to participate in religious ceremonies that can be accomplished at cell-side (for example, communion).  Additionally, close management inmates shall be allowed to possess religious publications . . . and have access to a spiritual advisor or clergy visit with citizen clergy persons at a time and location approved by the warden. Religious publications shall not count toward the limit on personal book possession . . . but do fall under the storage space provisions of Rule 33-602.201, F.A.C."  Fla. Admin. Code r. 33-601.800 (10)(h).

Third, if the injunction plaintiff seeks were granted, prison officials would have to expend considerable resources to maintain institutional security.  Plaintiff requests that prison officials either (1) "provide a clean space on all levels of CM (1, 2, 3) for the Muslims to attend Jumah services on Fridays at 12:15 in the afternoons; or (2) "purchase 36 portable TVs with high definition and DVD players with 45 pre-record Kutbars (Islamic preaching out of the Qur'an) in (English and Arabic) to be watched on Jumah Fridays."  Considering the demonstrated behavioral problems of prisoners in plaintiff's category, allowing these C/M inmates to attend Jumah would require the prison to commit substantial resources to monitoring these interactions, diverting

limited resources away from other prison needs.  Likewise, purchasing the equipment and materials plaintiff identified would require the expenditure of significant resources.  Moreover, allowing C/M inmates to utilize this equipment would require the prison to have staff available to handle any disturbances.  C/M status is, in the first place, a reasonably calculated response to the institutional challenge of avoiding disturbances, which may well endanger personnel and other inmates.

Finally, the regulation here does not represent an exaggerated response to prison concerns.  Inmates in C/M are prevented from attending religious services with other inmates because they previously engaged in disruptive behavior.  Furthermore, as noted in defendant Courtney's grievance response, plaintiff can "work his way off C/M" if he wishes to participate in Jumah services.

Based on the foregoing, plaintiff cannot state a First Amendment claim.  Because plaintiff's close management status indicates he "has demonstrated an inability to live in the general population without abusing the rights and privileges of others," the prohibition on plaintiff participating in group prayer services on Friday is reasonable under *Turner v. Safley*.  *Cf. Johnson v. Brown*, 581 F. App'x 777, 781 (11th Cir. 2014) (reversing district court's *sua sponte* dismissal of complaint because "we cannot say that this is a case in which the prison officials' legitimate In

penological interests are apparent from the face of the complaint.").

In addition, plaintiff alleges only that the defendants denied his grievances concerning his request to participate in Jumah.   The denial of a grievance is insufficient to establish liability under § 1983.   *See Swift v. Tifft*, Case No. 3:12cv171/RV/CJK, 2013 WL 5913796, at *9 (N.D. Fla. Oct. 31, 2013) ("[M]erely denying a grievance, without personally participating in the unconstitutional conduct . . . is insufficient to establish § 1983 liability."); *McCiskill v. Thompson*, no. 3:10-cv-211-MCR-MD, 2010 WL 4483408, at *4 (N.D. Fla. 2010) (holding that the mere denial of administrative grievances did not establish actionable wrongdoing under § 1983); *Demm v. Charlotte Cty. Jail Admin. & Staff,* no. 2:04-cv-634-FtM-99SPC, 2007 WL 57772, at *4-5 (M.D. Fla. Jan. 5, 2007) (finding that plaintiff failed to state a § 1983 claim where alleged liability was predicated on defendants' responses to grievances).   Plaintiff's First Amendment claims, therefore, should be dismissed against each defendant in both their individual and official capacities.

Responding to the motion to dismiss, plaintiff (somewhat ingeniously to be sure) asserts the court's failure to dismiss the complaint under 28 U.S.C. § 1915's screening provision requires the denial of defendants' motion to dismiss.  *See* 28 U.S.C. § 1915(e)(2)(b) (providing that the court shall dismiss the case of a litigant

proceeding *in forma pauperis* at any time if the court determines the action is (1) frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks monetary damages against a defendant who is immune from such relief). Contrary to plaintiff's novel assertion, this court is not prohibited from considering the motion to dismiss on its merits merely because the court did not already dismiss the complaint pursuant to § 1915.

RLUIPA

"Section 3 of RLUIPA provides that '[n]o government shall impose a substantial burden on the religious exercise' of an institutionalized person unless, . . . the government demonstrates that the burden 'is in furtherance of a compelling governmental interest' and 'is the least restrictive means of furthering' that interest." *Sossamon v. Texas*, 563 U.S. 277, 281, 131 S. Ct. 1651, 179 L. Ed. 2d 700 (2011) (*citing* 42 U.S.C. § 2000cc–1(a)). "A person may assert a violation of [RLUIPA] as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." 42 U.S.C. § 2000cc–2(a).

As the defendants correctly note, plaintiff cannot recover monetary damages under RLUIPA. In *Sossamon v. Texas*, the Supreme Court held that sovereign immunity bars suits for damages against a state under RLUIPA. 563 U.S. at 280; *id*.

at 293 ("We conclude that States, in accepting federal funding, do not consent to waive their sovereign immunity to private suits for money damages under RLUIPA because no statute expressly and unequivocally includes such a waiver.").   In addition, "RLUIPA does not create a private action for monetary damages against prison officials sued in their individual capacity." *Hathcock v. Cohen*, 287 F. App'x 793, 798 (11th Cir. 2009) (*citing Smith v. Allen*, 502 F.3d 1255, 1275 (11th Cir. 2007)); *see also Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014) (holding RLUIPA "does not authorize suits against a person in anything other than an official or governmental capacity" because of limitations on Congress's power under the Spending Clause).   Thus, the only relief plaintiff may obtain for a RLUIPA violation is declaratory and injunctive relief.  *See Smith*, 502 F.3d at 1271-75, *abrogated on other grounds by Sossamon*, 563 U.S. at 288 (abrogating the *Smith* court's holding that RLUIPA waived state sovereign immunity).

Plaintiff's transfer from Santa Rosa Correctional Institution to Northwest Florida Reception Center, however, moots any claim for declaratory and injunctive relief.  *See Smith*, 502 F.3d at 1267 ("The general rule in our circuit is that a transfer or a release of a prisoner from prison will moot that prisoner's claims for injunctive and declaratory relief.") (*citing McKinnon v. Talladega Cnty., Ala.*, 745 F.2d 1360,

1363 (11th Cir. 1984), *and Zatler v. Wainwright*, 802 F.3d 397, 399 (11th Cir. 1986));

*Spears v. Thigpen*, 846 F.2d 1327, 1328 (11th Cir. 1988) (holding that claims

regarding treatment at facility at which prisoner was no longer incarcerated were

moot); *see also Hathcock* , 287 F. App'x at 798-99 (plaintiff's transfer to another

facility rendered "moot" any remaining claim for declaratory or injunctive relief

under RLUIPA). Even assuming plaintiff continues to experience similar treatment

at NWFRC, none of the four named defendants are in a position to offer plaintiff

relief at that facility. *See Rowan v. Harris*, 316 F. App'x 836 (11th Cir. 2008)

(holding that since prisoner had been transferred to another prison facility and the

guards against whom he sought equitable relief were no longer in a position to

retaliate against him or fail to respond to his grievances, his First Amendment claim

was moot). The only entity capable of changing the policy plaintiff challenges is the

Florida Department of Corrections. *See* § 944.09, Fla. Stat. (providing the FDOC

with rulemaking authority over prison affairs). Thus, plaintiff's claims under

RLUIPA should also be dismissed.

Remaining Claims

Plaintiff also asserts the defendants' actions violated his rights under the

Eighth, Ninth, and Fourteenth Amendments. The complaint, however, alleges only

that the defendants denied plaintiff the opportunity to attend Jumah services. Plaintiff, therefore, has not established a viable claim under of any of those amendments. *See e.g.*, *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) ("Generally speaking, prison conditions rise to the level of an Eighth Amendment violation only when they 'involve the wanton and unnecessary infliction of pain.'") (citation omitted); *Jenkins v. Comm'r of Internal Revenue*, 483 F.3d 90, 92 (2d Cir. 2007) ("The Ninth Amendment is not an independent source of individual rights; rather, it provides a 'rule of construction' that we apply in certain cases.").

To the extent plaintiff is attempting to bring claims under state law, the court should decline to exercise jurisdiction over those claims and they should be dismissed without prejudice to him pursuing them in state court. Title 28 U.S.C. § 1367(c)(3) provides that the district court may decline to exercise supplemental jurisdiction over claims after it has dismissed all claims over which it has original jurisdiction. Where § 1367(c) applies, considerations of judicial economy, convenience, fairness, and comity may influence the court's discretion to exercise supplemental jurisdiction. *Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997) (*citing Palmer v. Hosp. Auth. of Randolph Cty.*, 22 F.3d 1559, 1569 (11th Cir. 1994)). The Eleventh Circuit has encouraged district courts to dismiss any remaining state

claims when the federal claims have been dismissed prior to trial.  *See Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004).

Taking these factors into account in this case, the court concludes that any state law claim asserted by plaintiff should be dismissed to permit him to pursue it in a more appropriate forum.  While plaintiff might prefer to continue litigating his case in this forum, this court has a substantial number of original jurisdiction cases awaiting review, and neither judicial economy nor fairness to other litigants support retaining jurisdiction of plaintiff's state claims and delaying justice in other cases. Furthermore, the state court is best equipped to research and rule on matters of state law, and comity would suggest that it should be allowed to do so. Moreover, the supplemental jurisdiction statute contains a tolling provision.  *See* 28 U.S.C. § 1367(d) (state claims asserted in federal court along with "related" federal claims "shall be tolled while the claim is pending and for a period of 30 days after it is dismissed"); *Personalized Media Commc'ns, LLC v. Scientific-Atlantic, Inc.*, 493 F. App'x 78, 82 n.1 (11th Cir. 2012) ("'Section 1367(d), giving the plaintiff at least 30 days to re-file in state court after a federal court declines to exercise supplemental jurisdiction, removes the principal reason for retaining a case in federal court when the federal claim belatedly disappears.'") (citation omitted).  Therefore, plaintiff's

pursuit of any state law claim in state court would not be prejudiced by this court's declining to exercise supplemental jurisdiction over those claims.

Accordingly, it is respectfully RECOMMENDED:

1.      That the defendants' motion to dismiss (doc. 82) be GRANTED.

2.      That this case be DISMISSED WITHOUT PREJUDICE for plaintiff's failure to state a claim on which relief may be granted.

3.      That all pending motions be DENIED AS MOOT.

4.      That the clerk be directed to close the file.

At Pensacola, Florida, this 22nd day of March, 2016.


/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon the Magistrate Judge and all other parties. A party failing to object to a Magistrate Judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* U.S. Ct. of App. 11th Cir. Rule 3-1; 28 U.S.C. § 636.

Case No. 3:14cv231/MCR/CJK